[Crim. No. 7652.   Second Dist., Div. Three.   Jan. 25, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. CHARLIE
HARRIS, Defendant and Appellant.

Charlie Harris, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, and Elizabeth Miller,
Deputy Attorney General, for Plaintiff and Respondent.

SHINN, P. J.—In a jury trial, in which he was repre-
sented by private counsel, Charlie Harris was convicted,
under indictment, of two offenses of selling heroin. He ad-
mitted the allegation of the amended indictment that he had
suffered two former convictions of felony. He was sentenced
to state prison and has taken an appeal from the judgment.
Upon his application for appointment of counsel we read the

record, and having determined that the appeal is groundless, we denied the application. Defendant has filed briefs.

There was evidence of the following facts. Early in the afternoon in August of 1960 Officer Hairston of the Los Angeles Police Department, in company with one Pier, encountered one Sorrell who offered to join Hairston in the purchase of heroin. Each contributed $4.00, which was given to defendant in return for a red balloon and its contents. The balloon was passed through the hands of Pier to Sorrell, who shortly thereafter divided the contents with Hairston. At the trial it was proved that the balloon had contained heroin. Later in the day, in the company of Pier, Hairston encountered defendant in the rear of a café, where Hairston purchased from defendant a pink balloon and contents for $7.00. The contents of the balloon were proved at the trial to be heroin. Due to the fact the police were engaged in a widespread investigation of narcotic activities defendant was not arrested until about two and one-half months after the transactions with the officer. Hairston also testified that after defendant's arrest in the course of an interview defendant stated to Hairston "I was selling to the other guy. I wasn't selling to you." Officer Wesley testified that he was present with other officers, including Hairston, when defendant was interviewed in the jail. Defendant's statements were made freely and voluntarily. A recording was made of the conversation and the recording was played to the jury. The tape, the box and contents were received in evidence without objection. There was no transcription of the tape. On the stand defendant denied that he knew Hairston, Pier or Sorrell and denied having had any transaction with them. He testified that there were a lot of differences between the conversation and the recording. When asked by his counsel to state "what was said that is not on the tape or what was not said that is on the tape?" the only reply was "The tape said that I sold some dope. I didn't sell any dope to anybody, nobody gave me any four dollars. I never sold nobody any dope because I was sick in November."

We have had occasion to express disapproval of the practice of playing tape recordings to a jury without having a transcription made as a part of the oral proceedings. (*People* v. *Mulvey*, 196 Cal.App.2d 714, 719 [16 Cal.Rptr. 82].) In the present case instead of receiving in evidence the tape, the box and contents, the court should have required the reporter to make a record of the recording. However, it does not

appear that the absence of a transcription of the recording has resulted in any prejudice to the defendant. It would seem that the only part of the interview which the People deemed important was the statement elicited from Officer Hairston that defendant said he was selling a narcotic to someone else and not to Hairston. Defendant was given an opportunity to testify to any errors in the recording of the conversation. His testimony was substantially to the effect that he made no incriminating statement. Apparently, the only purpose of the People was to prove by the recording the same admission testified to by Officer Hairston. The irregularity in the failure to make a transcription of the recording was inconsequential.

▇ After the jury had retired it was stipulated that defendant's attorney need not be present when the verdict was returned, that if requested by the jury any evidence might be reread to them, and that the recording, if requested, might be replayed in the absence of the attorney. At the request of the jury the recording was replayed, but there were no other proceedings in the absence of defendant's attorney. Defendant claims he was prejudiced by this procedure. Clearly, this is not the case. The record shows that the attorney consulted with the defendant concerning his absence from the courtroom, and that defendant expressed his satisfaction with the procedure. The presence of the attorney was not necessary during the replaying of the recording.

The facts testified to by Officer Hairston clearly established the guilt of defendant, and his denials of the same presented only a question of fact for the trial court and on the appeal present no question of law.

As is usual in such cases, defendant's brief contains frivolous claims of error. The indictment was amended to substitute ''Charlie'' for ''Charles'' wherever the latter appeared. This was on motion of defendant's attorney. Although defendant was without counsel on the first date set for arraignment the matter was continued and he was represented by counsel at the time he was arraigned. On the day of trial the information was amended by adding the allegation of the two former convictions. Defendant was arraigned on the amended indictment; he pleaded not guilty and admitted the two prior convictions. It was the duty of the district attorney to move the amendment and the duty of the court to grant it. (Pen. Code, § 969a.)

The judgment is affirmed.

Ford, J., concurred.

A petition for a rehearing was denied February 14, 1962, and appellant's petition for a hearing by the Supreme Court was denied March 21, 1962. Peters, J., was of the opinion that the petition should be granted.